[No. 43117. En Banc. June 13, 1974.]

THE STATE HIGHWAY COMMISSION, *Petitioner*, v. ROBERT S. O'BRIEN, *as Treasurer of State, Respondent.*

*Slade Gorton, Attorney General,* and *Thomas R. Garlington* and *Robert M. McIntosh, Assistants,* for petitioner.

*Slade Gorton, Attorney General,* and *Robert E. Lundgaard, Special Assistant* (of *Pebbles, Swanson & Lindskog*), for respondent.

HUNTER, J.—This case arises from an application for a writ of mandamus filed by the petitioner, State of Washing-

ton (Washington State Highway Commission), directed to the respondent, Robert S. O'Brien as State Treasurer, to compel the expenditure of money from the state motor vehicle fund for the payment of design comparison appraisal work preliminary to property acquisition and construction of "park and ride" facilities in the metropolitan Seattle area.

The agreed statement of facts filed in this case shows that a resolution No. 2608 was adopted by the Washington State Highway Commission (hereinafter referred to as the petitioner) on August 21, 1973. Pursuant to this resolution, the petitioner directed the director of the Washington State Department of Highways to proceed with the preliminary engineering for two "park and ride" facilities, to be located contiguous to interchanges located on Interstate (SR) 90 and Interstate (SR) 405, and to be designed to increase the efficient utilization of these highways by providing parking for motorists desiring to transfer from their private vehicles to busses operated by the municipality of metropolitan Seattle (hereinafter referred to as Metro). The resolution of the petitioner provides that the first "park and ride" facility will be designated "Bellevue South" and will be located immediately north of and contiguous to the south Bellevue interchange on Interstate 90. The resolution of the petitioner also provides that the second "park and ride" facility will be designated "Newport Hills" and will be located immediately east of and contiguous to the 112th Avenue Southeast interchange on Interstate 405. Also pursuant to resolution No. 2608, the petitioner directed the director of the Department of Highways to commence a site selection study for a "park and ride" facility, together with the necessary connections to Interstate 90 at Eastgate, in the vicinity of the Bellevue Community College and the 136th Street approach to the college.

For the purposes of comparison of alternative designs prior to property acquisition and construction of the above

described "park and ride" facilities, the Washington State Department of Highways entered into an appraisal service contract with Hugh A. Thompson on August 31, 1973. On September 1, 1973, Hugh A. Thompson submitted a statement in the amount of $100 for the work accomplished as of that date on the contract. In accordance with normal Department of Highways' procedures, an invoice voucher and an unsigned warrant, drawn upon the motor vehicle fund, were prepared for signature by the respondent, State Treasurer, for payment of the statement submitted by Mr. Thompson. By letter dated January 24, 1974, from J. Milligan, Finance Officer of the Department of Highways, the above described invoice voucher and unsigned warrant were transmitted to the respondent with a request that the respondent sign the warrant in payment of the above mentioned statement. By letter the respondent, acting upon the advice of the Attorney General, stated that he would not issue the requested warrant because the constitutionality of the use of moneys in the motor vehicle fund for "park and ride" facility purposes is in doubt.

On January 30, 1974, the petitioner filed its application for a writ of mandamus with this court to compel the respondent to expend money from the motor vehicle fund for the "park and ride" facilities. By answer filed on January 31, 1974, the respondent asserted that the use of motor vehicle funds for the appraisal, acquisition, and construction of "park and ride" facilities is an improper diversion of such funds contrary to the eighteenth amendment to the Washington State Constitution.

The question then posed before this court is whether the expenditure of money from the Washington state motor vehicle fund for the design, acquisition and construction of "park and ride" facilities violates the eighteenth amendment of our state constitution.

The legislative enactment, pursuant to which the petitioner adopted the resolution providing for the construction

of "park and ride" facilities, provides as follows (RCW 47.12.270):

> The state highway commission may acquire real property or interests in real property by gift, purchase, lease, or condemnation and may construct and maintain thereon fringe and transportation corridor parking facilities to serve motorists transferring to or from urban public transportation vehicles or private car pool vehicles.

Pursuant thereto, the petitioner adopted the heretofore referred to resolution No. 2608. The purpose of the resolution was stated in the preamble as follows:

> [T]he proposed park and ride facilities at Bellevue South and Newport Hills as shown on plan sheets marked Exhibits A and B should be developed *as integral parts of the adjacent Interchanges and Interstate Highways to increase the efficient utilization of these highway facilities* by permitting motorists to transfer from private automobiles to Metro busses to travel to the central business district and other destinations in the City of Seattle . . .

(Italics ours.)

It is implicit that what the legislature had in mind at the time of the enactment of RCW 47.12.270, as well as did the petitioner in the adoption of resolution No. 2608, was to implement the operation of the highway system with maximum efficiency in urban areas such as King County, and that highway facilities be designed and constructed to assist in the accommodation of peak hour volumes of commuters traveling to and from work in the early morning and late afternoon. This court can take judicial notice that at such times traffic on collector highways in suburban areas may create no problem, but as the traffic converges toward the metropolitan Seattle center and enters the major highway arteries it becomes sometimes greater than the highway system can accommodate, and that the resulting congestion causes driving to become more hazardous and increasingly dangerous.

The question then is whether the objective of a more efficient utilization of highways and safety in travel through the use of "park and ride" facilities, for relieving congestion in the urban and fringe urban areas, such as the Interstate 90 and 405 corridors entering Seattle, comes within the ambit of the exclusive highway purposes for which state motor vehicle funds may be expended under amendment eighteen of the Washington State Constitution, which provides as follows:

All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively *for highway purposes. Such highway purposes shall be construed to include the following*:
 (a) The necessary operating, engineering and legal expenses connected with the administration of public highways, county roads and city streets;
 (b) The construction, reconstruction, maintenance, repair, and *betterment of public highways*, county roads, bridges and city streets; including the cost and expense of (1) acquisition of rights-of-way, (2) *installing, maintaining and operating traffic signs and signal lights*, (3) *policing by the state of public highways*, (4) operation of movable span bridges, (5) operation of ferries which are a part of any public highway, county road, or city street;

(Italics ours.)

■ Although the objective of efficient utilization in the operation of highways and reducing congestion and hazardous driving conditions is not specifically spelled out, it is, nevertheless, implicitly related to the specific highway purposes delineated in the amendment. That this is so we need only look to the language of this court in the recent case of *State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 561, 452 P.2d 943 (1969), wherein we stated:

It is true that we said that funds can be used for purposes which indirectly benefit the highway system, *but the same paragraph makes it clear that those purposes*

*are the ones mentioned in the amendment itself, all of which contribute toward the safety, administration, or operation of the highway system.*

(Italics ours.)

 We are satisfied that the proposed "park and ride" facilities heretofore referred to are an integral part of the highway system and are directly related to a more efficient and safer operation of the system; and that the expenditure of funds for the accomplishment of these objectives comes within the mandate of the amendment limiting the expenditure of such funds exclusively for highway purposes.

It is strenuously argued that *State ex rel. O'Connell v. Slavin, supra,* holds to the contrary. We disagree. The case is not apposite. It concerned the use of highway funds for the financing of a public transportation system, including busses, trains or other carriers, each holding a number of passengers, which may travel upon highways or *rails* or *water,* or *through the air*. We properly held that such a use of funds was not for a highway purpose contemplated by the Eighteenth Amendment.

In view of the basis of our disposition of this case, the other arguments raised need not be discussed.

It should be noted the limitation in the resolution of the petitioner, State Highway Commission, restricting the use of "park and ride" facilities from private vehicles to busses, operated by Metro, was unnecessary as it failed to carry out the full authorization of RCW 47.12.270, which also provided for the use of "park and ride" facilities to serve motorists transferring to or from private car pool vehicles. The expenditure of highway funds would likewise be proper for this purpose for the same reasons justifying the "park and ride" facility for the transfer of motorists to and from metropolitan Seattle busses.

The application for a writ of mandamus is granted.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.